ROSENFELD & SAWYER
ALLEN SAWYER SBN 173565
555 Capitol Mall, Suite 1245
Sacramento, CA 95814
Telephone;(916) 447-2070
Fax: (800) 968-0650

Attorneys for Defendant
AMANDEEP MULTANI

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>AMANDEEP MULTANI,<br><br>Defendant. | Case No. 2:21-CR-00078-JAM<br><br>DEFENSE'S RESPONSE TO UNITED STATES' OPPOSITION TO MOTION FOR BAIL REVIEW<br><br>Date: May 13, 2021<br>Time: 11:00 a.m.<br>Judge: Hon. Jeremy D. Peterson |

Defendant, through his counsel, hereby submits the following response to the United States' Opposition to Motion for Bail Review (ECF no. 76). The United States purports that additional evidence has come to light since the last detention hearing based on recorded jail calls but acknowledged that said calls are ambiguous and cryptic. The defense asked for a continuance to review said jail recordings and investigate there meaning. The defense has documentary evidence, background information, that clearly shows that nothing in said recordings support the conclusion that Mr. Multani is a flight risk or a danger to the community. Furthermore, the defense has uncovered substantial new evidence beyond the calls that further supports that Mr. Multani does not have hidden resources and he is not a danger to the community.

**Procedural History**

Initially, the government objected to Mr. Multani's release on bond due to the fact there was an I.C.E. hold for the removal and deportation of Mr. Multani. That order has since been removed and as Pre-Trial Services most recent report indicates, "[a]n updated Immigration and Customs Enforcement records check conducted on May 5, 2021, reflects the defendant was born in India and appears to be a Non-immigrant Overstay: he was legally admitted to the U.S. as a non-immigrant until September 17, 2019. If the defendant has remained longer (than September 17, 2019) without I.C.E permission then he may be in violation of immigration laws." Mr. Multani is not in violation of immigration laws because he filed for asylum under the immigration laws of the United States. Mr. Multani is legally residing in the United States.

The next issued raised by the government in opposition of Mr. Multani's release was his lack of collateral supporting bond. On April 16, 2021, the United States Attorney's Office filed a Memorandum for the Detention Hearing, (ECF no. 28). In this memorandum, the United States government was concerned with the low amount of collateral posted by Mr. Multani compared to his codefendants. Originally Mr. Multani was only able to secure four hundred thousand dollars ($400,000) in real estate equity, however, today he has secured over one million and four hundred thousand dollars ($1,400,000) in real estate equity. This is a substantial amount of real estate equity from family and friends, including personal residences, securing a bond that strongly incentivizes Mr. Multani's continual appearance in this matter.

Furthermore, in the same motion the United States was concerned that Mr. Multani may have access to undisclosed financial resources. The defense has left no stone unturned and has responded diligently with every piece of documentary evidence to show that Mr. Multani does not have considerable financial resources. The defense has provided bank records and business records to show that he does not have a substantial income or wealth that is hidden from the government.

Prior to being arrested, Mr. Multani and his family were living in a small apartment.  Mr. Multani was without a work visa, struggling financially, and had only recently began working for new businesses his father started.  This is substantiated by the fact that his sister was the only family member able to pledge collateral for his bond application.

On May 5, 2021, Pretrial Services reported in a Memorandum that Mr. Multani's wife made inconsistent statements.  Pretrial Services is concerned about his wife's statements that she "often see his dad's name on accounts" and "[h]opefully he has most of his accounts under his dad's name."  These statements from Mr. Multani's wife are speculative or duplicative of Mr. Multani's own statements to the court.  Mr. Multani disclosed he had access to his father's trucking business account for small incidental purchases.  This trucking company was only started a few months ago and currently has a gross business banking balance of twenty-six thousand dollars ($26,000) and hardly presents access to substantial undisclosed resources.  (*See* Exhibit 1, 1.1, Filed Under Seal)  Furthermore, Ms. Multani's statement to Pretrial Services where she said that "[h]opefully he has most of his accounts under his dad's name," should not be used to make a determination on Mr. Multani's honesty or candor.  What his wife's "hopes" are merely a speculative comment.  There is a cultural and language barrier that has seemed to confound this issue.  Furthermore, Mr. Multani's wife's hopes and desires are irrelevant.  Also, as mentioned, Mr. Multani's father allowed him to use his debit card for 5AAB trucking expenses and this was fully disclosed.

**Jail Calls**

On May 5, 2021, the United States filed an opposition to our Motion for Bail Review.  New concerns were raised based on jail calls made by Mr. Multani. Portions of these jail calls are summarized below and explain the context of the call and show that Mr. Multani is being honest, candid, and will not flee if released:

- **April 9, 2021, Defendant spoke with an unknown woman about a U-Haul truck and indicated that they would be emptying the bank accounts if the truck was not delivered.**

The context of this call involves concerns by Mr. Multani that if his U-Haul truck was not returned, then U-Haul would charge his father's credit card for each day the truck was late. (*See* Exhibit 1.2 Filed Under Seal). This fact further shows that Mr. Multani is not a wealthy person. Mr. Multani was worried about a daily late fee that would drain his father's debit card. A person with substantial income or hidden wealth would not worry about these nominal late fees. On April 7, 2021, Mr. Multani rented this U-Haul truck to help his friends move furniture and office supplies of 24/7 Truck Repair Inc. to their new address across town in Sacramento, CA. (*See* Exhibit 1.3, 1.4 Filed Under Seal) Mr. Multani was arrested on April 8, 2021 and had no way to get the truck back to U-Haul. The "third party" referred to by the United States that would "empty his entire bank account" was actually U-Haul. The U-Haul rental, however, was returned on April 9, 2021.

It is unreasonable to postulate that the conversation about the U-Haul truck involved illicit activity. Mr. Multani used a credit card clearly identified with Mr. Multani and his father's trucking business. (*See* Exhibit 1.2 Filed Under Seal). What makes better sense is that Mr. Multani's recorded conversation shows his concern that U-Haul would start deducting late fees for failure to return a rental truck on the date agreed upon at the time of the contract. Therefore, the concern with Mr. Multani hiding large amounts of cash or hidden assets is unfounded.

- **Later, on April 9, 2021, Defendant instructed an unknown male to deliver the U-Haul truck. Defendant said that if it is not delivered, a third party will empty his (Defendant's) entire bank account.**

Mr. Multani was arrested on April 8, 2021 and had no way of returning the truck. The key for the U-Haul was on his person when he was arrested and confiscated by police. It was later returned to his family. A driver from Miri Piri Transport Company returned the U-Haul on April 9, 2021 so that additional charges would not drain Mr. Multani's father's Chase credit card.

- **On April 14, 2021, Defendant told a woman (believed based on context to be his wife) that the passport for an individual (believed from context to be their minor child) will soon be renewed and that they need to obtain that individual's (i.e., the child's) Indian visa immediately. The woman responded that they will need Defendant's signature to do so.**

The above conversation regarding Mr. Multani's daughter was related to her parent's immigration status. Mr. Multani and his wife were concerned that if Mr. Multani is in custody and his wife is later deported, their daughter would not be able to travel back to India and would be parentless. This urgency was stressed by Mr. Multani because of his confinement and his wife's current immigration status. Mr. Multani, Mrs. Multani, and their daughter will surrender their passports immediately upon request to alleviate any concern that Mr. Multani will flee. He has no intentions of leaving this country while his trial is pending. He and his wife's concerns are for their daughter so that she is not stuck in a situation with no parental care. (*See* Exhibit 2, Filed Under Seal)

- **On April 20, 2021, Defendant again spoke with the same woman (believed to be his wife) and indicated to her that he has two accounts, one with $20,000 - $25,000 and the other with $11,000. Defendant also directed the woman to contact "Jyoti" to get the money back (approximately $15,000 - $20,000).**

The above referenced conversation regarding this money was previously disclosed to Pretrial Services and should not be construed as money that is being hidden by Mr. Multani. On May 5, 2021 Pretrial Services Officer Alicia Mirgain indicated in her 2nd Supplemental Pretrial Services (page 3) that "Exhibit 1 appears to be a Chase Bank statement for 5AAB Express LLC from January 2021 indicating a balance of $23,087.61. This $25,000 described on the phone is the same Chase account that was previously disclosed to Pretrial Services. (*See* Exhibit 3, Filed Under Seal)

The reference to another $11,000 is referring to Mr. Multani's father's bank accounts, which are roughly $3,000 in a Bank of America account and $10,882.61 in a Wells Fargo account (as of

5/3/21).   The money referred to by Amandeep Multani was in reference to two accounts jointly held by his father and sister Veenu Kaur. Therefore, these facts show that Mr. Multani in no way tried to hide assets from the Court or Pretrial Services.

- **On April 21, 2021, Defendant asked the same woman (believed to be his wife) about getting the U-Haul truck delivered. Later during this call, the woman told him that they are now unable to sell their (Defendant's and the woman's) property, possibly referring to one of the assets offered to be posted as collateral to secure Defendant's potential release. Defendant responded that they could use a third party to make some sort of exchange afterwards, if needed.**

The properties being discussed here do not belong to Mr. Multani but rather belong to his father. What Mr. Multani is discussing is his parents selling property so he could raise more money as collateral for his bond. The four properties were all purchased years ago before Mr. Multani ever lived in the United States:

House purchased on 09/24/1987;

Marriage palace/ banquet hall - 12/28/2011;

Ph hostel/ guest house - 07/23/2013.  (*See* Exhibit 3.1, 3.2, 3.3, Filed Under Seal).

 All the assets that were mentioned on the jail call belonged to the family and he was asking for his family's help in liquidating the real estate so he could raise cash to be released from custody. (*See* Exhibit 4, Filed Under Seal)

- **On April 27, 2021, Defendant told the same woman (believed to be his wife) that they would decide something when he got out of custody. The woman responded that there is nothing to decide and stated, "aren't we going over there?" The Defendant then said they will have them follow and asked cryptically if she understood.**

The above conversation is not in anyway a reference to fleeing the United States pending trial.  The exact conversation is as follows:

> Wife:   Yes she is fine. Earlier she did not use to study at night. Asked ... Me " you are going to stay and not move" I said. We don't know
>
> Amandeep Multani:   No. We are going to stay here. Don't take any tension
>
> Wife:   I think we'll look into it Sunny ... If need we will go there. There is a certain time. You come back then all will be well

In the above referenced conversation, he was referring to moving to New Jersey with his sister who would act as a third-party custodian. There had been a discussion with the government about whether there was a preference if Mr. Multani was released in California or New Jersey on bond. Mr. Multani has a preference for California.  Pretrial Services had indicated that New Jersey was preferred because of the domicile of the third-party custodian.  This discussion was just a discussion of his pretrial release status in California or New Jersey. (*See* Exhibit 5)

**Conclusion**

Mr. Multani and his family have been candid with the court and Pretrial Services.  Mr. Multani has been assisting his counsel in clarifying his answers to Pretrial Services so that he can be released from custody and be reunited with his family during the pendency of this case.  The exhibits provided to the court in previous filings are evidence of Mr. Multani's willingness to help the court determine his financial means and alleviate any worries that he poses a flight risk or public safety risk. The amount of support from family and friends by putting their homes up as collateral shows the court that there is immense personal trust and confidence in Mr. Multani that he will abide by all conditions if released on bond.  The latest concerns about the recorded phone calls should not in any way suggest that Mr. Multani will flee is released on bond.  The defense has provided bank records and business records to show that he does not have a substantial income or wealth that is hidden from the government.  Prior to being arrested, Mr. Multani and his family were living in a small apartment.  Mr. Multani was without a work visa, struggling financially, and had only recently began working for new businesses his father started.  This is substantiated by the

- 7 -
DEFENSE'S RESPONSE TO UNITED STATES' OPPOSITION TO MOTION FOR BAIL REVIEW

fact that his sister was the only family member able to pledge collateral for his bond application. Originally Mr. Multani was only able to secure four hundred thousand dollars ($400,000) in real estate equity, however, today he has secured over one million and four hundred thousand dollars ($1,400,000) in real estate equity. This is a substantial amount of real estate equity from family and friends, including personal residences, securing a bond that strongly incentivizes Mr. Multani's continual appearance in this matter.

Respectfully submitted,

                                              N. ALLEN SAWYER

Date: May 12, 2021                   By:      /s/Allen Sawyer
                                              N. ALLEN SAWYER
                                              Counsel for Defendant
                                              AMANDEEP MULTANI

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 12th day of May, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David W. Spencer
U.S. Attorney's Office
501 I Street, Suite 10-100
Sacramento, CA 95814

By:      /s/ Allen Sawyer
N. Allen Sawyer
ROSENFELD & SAWYER
ALLEN SAWYER SBN 173565
555 Capitol Mall, Suite 1245
Sacramento, CA 95814
Telephone;(916) 447-2070
Fax: (800) 968-0650